UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HORACE R. ROBINSON,<br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF<br>HEALTH AND HUMAN RESOURCES,<br>    Defendant. | Civil Action No. 21-1644 (CKK) |

MEMORANDUM OPINION
(October 14, 2021)

Plaintiff Horace Robinson, proceeding *pro se*, has sued the United States Department of Health and Human Services ("HHS") for alleged shortcomings in the agency's handling of an equal employment opportunity ("EEO") complaint Mr. Robinson filed in August 2020. Now pending before the Court is HHS's [7] Motion to Dismiss, which seeks the dismissal of Mr. Robinson's complaint for lack of subject matter jurisdiction and, alternatively, for failure to state a claim. Upon consideration of the briefing, the relevant authorities, and the record as a whole,[1] the Court will **GRANT** HHS's [7] Motion. Specifically, the Court finds that the doctrine of derivative jurisdiction applies in this case and compels dismissal. The Court, therefore, will **DISMISS** Mr. Robinson's *pro se* complaint **WITHOUT PREJUDICE**.

---

[1] The Court's consideration has focused on the following:
- Not. of Removal, ECF No. 1;
- Compl., ECF No. 1-1;
- Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 7-1;
- Pl.'s Response to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 9; and,
- Def.'s Reply, ECF No. 10.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

1

I.   BACKGROUND

On March 30, 2021, Mr. Robinson filed a *pro se* civil action against HHS in the Superior Court of the District of Columbia ("D.C. Superior Court"). *See* Not. of Removal, ¶ 1. In his complaint, Mr. Robinson alleges that he filed a "formal EEO complaint" with HHS on August 17, 2020. *See* Compl. at 1. But because of a conflict of interest, HHS allegedly sent Mr. Robinson's EEO complaint to the EEO Office at the National Aeronautics and Space Administration for processing. *Id.* Thereafter, Mr. Robinson signed a letter consenting to an extension of the investigation period for his EEO complaint through March 15, 2021. *Id.* According to Mr. Robinson, however, "[t]he investigation was never performed" and "no Final Agency Decision was issued." *Id.* at 2. Mr. Robinson also contends that the "hostile work environment" claim in his EEO complaint was impermissibly "fragmented" from his corresponding "discrimination" claim. *Id.*

Confronted by these alleged EEO deficiencies, Mr. Robinson elected "not to file an appeal with the Merit Systems Protection Board," but rather to file a civil action directly against HHS. *Id.* As such, Mr. Robinson filed his *pro se* complaint in D.C. Superior Court, charging HHS with a "failure to provide final agency action." *Id.* at 1. More specifically, Mr. Robinson asserts three nominal claims against HHS, respectively for: (1) "Failure by the Agency to conduct an investigation with Management Directive 110," (2) "Failure by the Agency to provide a Final Agency Decision," and (3) "Fragmentation of the accepted claims." *Id.* Mr. Robinson further explains that his civil complaint seeks to compel HHS to "provide the requested relief in [Mr. Robinson's] formal [EEO] complaint." Pl.'s Opp'n at 2.

After filing his complaint in D.C. Superior Court, however, Mr. Robinson did not properly effectuate service on HHS because he failed to serve the United States Attorney's Office with a

2

copy of his complaint, as required by Federal Rule of Civil Procedure 4(i). *See* Not. of Removal, ¶ 1. Nonetheless, the United States Attorney's Office for the District of Columbia eventually received a copy of Mr. Robinson's complaint on June 3, 2021. *Id.* Then, on June 17, 2021, HHS timely removed Mr. Robinson's complaint to federal court, *see* 28 U.S.C. § 1446(b)(1) (requiring removal "within 30 days after the receipt by the defendant, through service *or otherwise*, of a copy of the initial pleading") (emphasis added), pursuant to 28 U.S.C. § 1442(a), *see* Not. of Removal, ¶ 3. As relevant here, § 1442(a) provides for the removal of a civil action against "any agency" of the United States, including HHS.

Following removal to this Court, HHS moved to dismiss Mr. Robinson's complaint under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). In its motion, HHS first argues that the doctrine of derivative jurisdiction strips this Court of jurisdiction over Mr. Robinson's claims and, therefore, compels dismissal. *See* Def.'s Mot. at 5–7. Alternatively, HHS advances the merits-based argument that Mr. Robinson's claims lack facial plausibility. *See id.* at 7–8. In light of Mr. Robinson's *pro se* status, the Court issued an order on July 6, 2021, directing Mr. Robinson to respond to HHS's dispositive motion. *See* Order, ECF No. 8, at 1 (citing *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988)). Mr. Robinson did so, timely filing his opposition on July 26, 2021. HHS then filed a its reply brief on August 2, 2021. Consequently, HHS's [7] Motion to Dismiss is fully briefed and ripe for this Court's review.

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and, therefore, "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, a court must dismiss a case pursuant to Federal Rule of Civil Procedure 12(b)(1) when it lacks subject matter jurisdiction. In determining whether there is jurisdiction, the

Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citation omitted); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."). "At the motion to dismiss stage, counseled complaints as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).

"Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted). Moreover, a court need not accept as true "a legal conclusion couched as a factual allegation" or an inference "unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal citation and quotation marks omitted). And ultimately, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. U.S. Env't Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

### III. DISCUSSION

In its motion to dismiss, HHS invokes the doctrine of "derivative jurisdiction" to challenge this Court's subject matter jurisdiction over Mr. Robinson's claims. *See* Def.'s Mot. at 5–7. As set forth below, the Court agrees with HHS that the derivative jurisdiction doctrine compels

4

dismissal in this case. Accordingly, the Court will **GRANT** HHS's motion under Rule 12(b)(1) and **DISMISS** Mr. Robinson's *pro se* complaint **WITHOUT PREJUDICE**.

*****

The doctrine of derivative jurisdiction traces its heritage to the near century's old pronouncement of the Supreme Court that "[t]he jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction." *Lambert Run Coal Co. v. Baltimore & O.R. Co.*, 258 U.S. 377, 382 (1922). Traditionally stated, the doctrine provides that "if the state court lacks jurisdiction over the subject matter or the parties, the federal court acquires none upon removal, even though the federal court would have had jurisdiction if the suit had originated there." *Arizona v. Manypenny*, 451 U.S. 232, 242 n.17 (1981) (citations omitted); *see also Merkulov v. United States Park Police*, 75 F. Supp. 3d 126, 129 (D.D.C. 2014). Therefore, the operative question under the derivative jurisdiction doctrine is whether the state court from which the pending complaint was removed originally possessed jurisdiction over that civil action. *See Day v. Azar*, 308 F. Supp. 3d 140, 142 (D.D.C. 2018) ("[M]y jurisdiction over Ms. Day's claims depends on whether the Superior Court of the District of Columbia has jurisdiction to hear Title VII claims against federal employers."). If not, then the federal court cannot "derive" any jurisdiction from that state court upon removal, and dismissal is required. *See Merkulov*, 75 F. Supp. 3d at 129 ("[U]nder the doctrine of derivative jurisdiction, a Federal court must dismiss a case if the State court lacked jurisdiction over the original claim.").

Admittedly, the justification for this derivative jurisdiction doctrine is "hardly obvious," *Ricci v. Salzman*, 976 F.3d 768, 773 (7th Cir. 2020), and the doctrine has faced considerable scrutiny from courts and commentators alike, *see, e.g.*, *Washington v. Am. League of Professional Baseball Clubs*, 460 F.2d 654, 658 (9th Cir. 1972) (calling the doctrine a "kind of legal *tour de*

*force*"); *Pelto v. Off. of Reg'l Chief Couns.*, No. 11-CV-815-WMC, 2013 WL 5295678, at *3 (W.D. Wis. Sept. 19, 2013) (describing the doctrine as "[b]ewildering"); Erwin Chemerinsky, FEDERAL JURISDICTION § 5.5, at 288 (1989) ("This rule has little justification, but has long existed."). In particular, the doctrine has faced criticism for "creating 'the anomalous result that a case within the exclusive jurisdiction of the federal courts [cannot] be removed to a federal court' because the State court from which the case was removed lacks jurisdiction." *Merkulov*, 75 F. Supp. 3d at 130 (quoting Wright & Miller, 14B Fed. Prac. & Proc. Civ. § 3721 (Rev. 4th ed.)). This Court itself recently commented critically on the circuitous barrier the doctrine presents to *pro se* litigants, who may not be well-versed in the technicalities of civil procedure or federal jurisdiction. *See James v. United States Postal Serv.*, 484 F. Supp. 3d 1, 4 (D.D.C. 2020).[2]

Perhaps because of these negative attributes inherent in the derivative jurisdiction doctrine, Congress eliminated the doctrine altogether for cases removed under the general federal removal statute, by amending 28 U.S.C. § 1441 in 1985 and then again in 2002. *See Palmer v. City Nat.*

---

[2]     It bears mention that the Seventh Circuit has developed a uniquely persuasive application of the derivative jurisdiction doctrine, which partially limits its peculiar effects. In that circuit, "[t]he doctrine of derivative jurisdiction . . . is . . . understood as a *procedural* bar to the exercise of federal judicial power. That is, the doctrine creates a *defect in removal*, but is not an essential ingredient to federal subject matter jurisdiction." *Rodas v. Seidlin*, 656 F.3d 610, 619 (7th Cir. 2011) (emphasis added). Accordingly, the Seventh Circuit has concluded that a derivative jurisdiction argument may be forfeited by a party who fails to raise it "within 30 days of removal." *Ricci v. Salzman*, 976 F.3d 768, 774 (7th Cir. 2020). This 30-day rule is commensurate with the time-period for challenging traditional removal defects under 28 U.S.C. § 1447(c). Nonetheless, the Seventh Circuit still recognizes that the derivative jurisdiction doctrine remains mandatory and, therefore, must be applied "if properly invoked." *Ricci*, 976 F.3d at 773. So long as "a defendant timely raises the derivative jurisdiction doctrine, it erects a mandatory bar to the court's exercise of federal jurisdiction." *Id.* at 774 ("If raised within 30 days, [the doctrine] results in dismissal without prejudice.").

In this case, Defendant moved for dismissal under the derivative jurisdiction doctrine within nineteen (19) days of removal. Consequently, dismissal without prejudice would remain appropriate even under the Seventh Circuit's precedent. Still, the Court highlights the Seventh Circuit's approach here as a potential framework for courts in this jurisdiction to consider in the future, as they attempt to safeguard against any unfair or inefficient results created by the derivative jurisdiction doctrine. *See* Wright & Miller, 14C Fed. Prac. & Proc. Civ. § 3726 (Rev. 4th ed.) ("The Seventh Circuit found a way to reduce the harshness of the derivative-jurisdiction doctrine."). The Seventh Circuit's "30-day rule" sensibly "puts the onus on defendants to raise the doctrine in a timely fashion and affords them its full benefit when they do. It also spares plaintiffs the misfortune of litigating a case until the eve of judgment, just to be booted from court without the ability to initiate a new action because the limitations period quietly expired in the meantime." *Ricci*, 976 F.3d at 774.

*Bank, of W. Virginia*, 498 F.3d 236, 245 (4th Cir. 2007) (describing the subsequent amendments). In its current form, § 1441(f) now states: "The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim." Yet, somewhat curiously, Congress made no such parallel amendment to 28 U.S.C. § 1442. *See Merkulov*, 75 F. Supp. 3d at 130 (explaining that Congress *did not* abrogate the derivative jurisdiction doctrine through an amendment to § 1442). Accordingly, district courts in this jurisdiction have unanimously found that the derivative jurisdiction doctrine still applies to cases against federal agencies and officers removed under § 1442(a).[3] And while the D.C. Circuit has not yet weighed in, every other federal court of appeals to address the issue has similarly concluded that the derivative jurisdiction doctrine applies to cases removed under § 1442(a).[4] The doctrine's persistence is ultimately grounded in longstanding Supreme Court precedent, which retains its continued vitality absent any Congressional intervention to the contrary. *See, e.g.*, *State of Minnesota v. United States*, 305 U.S. 382, 389 (1939).

And so, the derivative jurisdiction doctrine applies to Mr. Robinson's complaint, which HHS removed from D.C. Superior Court under 28 U.S.C. § 1442(a). *See* Not. of Removal, ¶ 3. The Court must determine, therefore, whether the D.C. Superior Court possessed subject matter jurisdiction over Mr. Robinson's complaint at the time of removal. It did not. In his complaint,

---

[3] *See Falice v. O'Brien*, No. CV 18-2946 (CKK), 2020 WL 6146623, at *3 (D.D.C. Oct. 20, 2020); *Woods v. Hawk-Sawyer*, No. CV 20-1152 (TFH), 2020 WL 6146876, at *2 (D.D.C. Oct. 20, 2020); *James*, 484 F. Supp. 3d at 4; *Farmer v. Disability Program Manager*, No. 19-CV-01731 (TNM), 2020 WL 2571521, at *2 (D.D.C. May 21, 2020); *Williams v. Perdue*, 386 F. Supp. 3d 50, 54 (D.D.C. 2019); *Day v. Azar*, 308 F. Supp. 3d 140, 142 (D.D.C. 2018); *Johnson v. D.C. Metro Transit Auth.*, 239 F. Supp. 3d 293, 296 (D.D.C. 2017); *Merkulov*, 75 F. Supp. 3d at 130; *Cofield v. United States*, 64 F. Supp. 3d 206, 215 (D.D.C. 2014); *McKoy-Shields v. First Washington Realty, Inc.*, No. 11-CV-01419 RLW, 2012 WL 1076195, at *2 (D.D.C. Mar. 30, 2012).

[4] *See Conklin v. Kane*, 634 F. App'x 69, 73 (3d Cir. 2015); *Bullock v. Napolitano*, 666 F.3d 281, 286 (4th Cir. 2012); *Lopez v. Sentrillon Corp.*, 749 F.3d 347, 351 (5th Cir. 2014); *Ricci v. Salzman*, 976 F.3d 768, 774 (7th Cir. 2020); *Rodriguez v. United States*, 788 F. App'x 535, 536 (9th Cir. 2019); *Utah v. Gollaher*, 804 F. App'x 947, 950 (10th Cir. 2020).

7

Mr. Robinson asserts claims against HHS for the agency's alleged failure to investigate and timely resolve his August 2020 EEO complaint. *See* Compl. at 1–2. But HHS is a federal agency insulated by the sovereign immunity of the United States. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). And "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Id.* Moreover, "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text." *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008) (quoting *Lane v. Peña*, 518 U.S. 187, 192 (1996)). Mr. Robinson, however, has pointed to no statutory text through which the United States unequivocally waived its sovereign immunity against claims like those in Mr. Robinson's complaint, *i.e.*, claims that a federal agency has failed to timely investigate an EEO complaint. *See* Compl. at 1–2. Neither has the Court identified any such waiver upon its own research. Without any indication of a waiver, therefore, the Court cannot find that HHS relinquished its sovereign immunity from suit. *See Gomez-Perez*, 553 U.S. at 491. Thus, Mr. Robinson has not shown, nor can this Court find, that the D.C. Superior Court possessed subject matter jurisdiction over Mr. Robinson's original claims against HHS. *See FDIC*, 510 U.S. at 475 ("Sovereign immunity is jurisdictional in nature."). Under these circumstances, the doctrine of derivative jurisdiction compels dismissal.

The same result would adhere if the Court more generously characterized Mr. Robinson's *pro se* claims as traditional causes of action under Title VII. *See* Def.'s Mot. at 6–7 (describing Mr. Robinson's claims as Title VII claims). To be sure, Title VII does contain a recognized waiver of sovereign immunity. Specifically, "Title VII waives the sovereign immunity of the United States by authorizing a federal employee who has exhausted his administrative remedies to 'file a civil action *as provided in section 2000e–5* of this title' against 'the head of the department, agency, or unit' by which he is employed." *Day v. Azar*, 308 F. Supp. 3d 140, 142 (D.D.C. 2018)

(quoting 42 U.S.C. § 2000e–16(c) (emphasis added)). In turn, § 2000e-5 makes clear that this waiver applies only to claims filed in "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States." 42 U.S.C. § 2000e–5(f). The D.C. Superior Court, however, is considered a state court for removal purposes, rather than a court of the "United States." 28 U.S.C. § 1451(1); *see also Palmore v. United States*, 411 U.S. 389, 408–09 (1973) (describing the District of Columbia court system as "essentially similar to those of the local courts found in the 50 States of the Union."). The United States's waiver of sovereign immunity, therefore, does not extend to Title VII claims filed in D.C. Superior Court, leaving that court without jurisdiction over Title VII claims filed against federal agencies like HHS. *See Day*, 308 F. Supp. 3d at 145; *Williams v. Perdue*, 386 F. Supp. 3d 50, 54 (D.D.C. 2019); *Bullock v. Napolitano*, 666 F.3d 281, 284 (4th Cir. 2012) ("Congress waived sovereign immunity for Title VII suits brought by federal employees against the United States, but it explicitly provided for jurisdiction only in federal courts. Nowhere in the language of the statutory authorization is there a waiver as to suits that otherwise might be brought in state courts."). As a result, the doctrine of derivative jurisdiction equally compels the dismissal of Mr. Robinson's claims against HHS, even to the extent they constitute causes of action under Title VII.[5]

---

[5] In *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820 (1990), "the Supreme Court interpreted § 2000e–5(f) [of Title VII] to grant concurrent jurisdiction to federal and state courts, even though the language and legislative history of Title VII refer only to United States district courts and other United States courts." *Bullock*, 666 F.3d at 285 (citing *Yellow Freight*, 494 U.S. at 823–26). Although Mr. Robinson does not raise the argument, the Court notes here for the sake of completeness that the holding in *Yellow Freight* does not apply in this case. The Supreme Court's reasoning on *Yellow Freight* rested on the premise that Title VII's "complete silence" as to the role of state courts did not rebut the presumption in favor of concurrent jurisdiction. *See Yellow Freight*, 494 U.S. at 823. But the question now before the Court is whether the United States has expressly waived its *sovereign immunity* through "unequivocal" statutory text. *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008). While Title VII's "silence" on the role of state courts does not rebut the presumption in favor of concurrent jurisdiction, neither does it expressly waive the United States's sovereign immunity. As explained *supra*, the United States *has not* expressly consented to suit under Title VII in state courts. Therefore, while state courts may have concurrent jurisdiction over Title VII claims against *private employers*, *see Carter-Obayuwana v. Howard Univ.*, 764 A.2d 779, 786 n.16 (D.C. 2001), the doctrine of sovereign immunity separately deprives them of jurisdiction over Title VII claims against federal agencies, *see Bullock*, 666 F.3d at 285–86; *Day*, 308 F. Supp. 3d at 144–45. Those claims must be pursued in federal courts.

## IV.  CONCLUSION

For the reasons set forth above, the Court will **GRANT** HHS's [7] Motion to Dismiss.  The Court concludes that the D.C. Superior Court did not possess subject matter jurisdiction over Mr. Robinson's complaint at the time HHS removed this case pursuant to 28 U.S.C. § 1442(a).  Accordingly, the doctrine of derivative jurisdiction compels the dismissal of Mr. Robinson's *pro se* complaint.  The Court, therefore, will **DISMISS** Mr. Robinson's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  The Court, however, will dismiss the complaint **WITHOUT PREJUDICE**, which allows Mr. Robinson to *re-file* his complaint in a court of competent jurisdiction with the benefit of the explanation provided in this Memorandum Opinion.

An appropriate Order accompanies this Memorandum Opinion.

**Dated**:  October 14, 2021

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge